**SO ORDERED.**

**SIGNED this 7 day of November,2013.**

*Stephani A. Humrickhouse*

_____

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:                                                                                                     CASE NO.

**KENNETH GORDON WELSH, III**                                    **13-02457-8-SWH**

       **DEBTOR**

**ORDER REGARDING MOTION TO COMPEL AND AWARD OF SANCTIONS**

This matter came on to be heard upon the Motion to Compel and Award Sanctions filed by

William C. Allen ("Allen"), requesting that the court compel the debtor to answer questions and

produce documents previously required pursuant to an order authorizing a Rule 2004 examination

entered on July 2, 2013.  The debtor filed a response on August 9, 2013.  The motion was heard on

September 19, 2013, in Raleigh, North Carolina.

**BACKGROUND**

On February 1, 2013, Allen initiated a state court action against the debtor for alienation of

affection, criminal conversation and defamation arising out of an alleged affair between the debtor

and Allen's former wife, Stephanie Allen (Wake County Civil Action No. 13-CVS-001457).  The

debtor filed a responsive pleading in the state court action on March 8, 2013.  On April 13, 2013,

the debtor initiated this Chapter 13 case and listed Allen as a creditor with a disputed claim on his

Schedule F.

At debtor's § 341 meeting, debtor refused to answer certain questions pertaining to Allen's claim. On June 18, 2013, Allen filed a motion seeking an order directing the Rule 2004 examination of and production of certain documents by the debtor. The debtor objected to the motion and a hearing was held on June 25, 2013. In an Order dated July 2, 2013, the Court granted Allen's Rule 2004 motion and required the debtor be present for an oral examination on July 9, 2013. Additionally, the debtor was required to produce documents, including:

> A.    Copies of each and every document of written correspondence between the debtor and Stephanie Allen, including without limitation every card, letter, email, text message, Facebook post and Facebook message, and note, from January 1, 2010, to the present; . . .
>
> E.    Copies of all documents consisting of writings, journals, and calendars relating in any way to the debtor's relationship with Stephanie Allen.

During the debtor's Rule 2004 examination, he objected to, and refused to answer, many of the questions posed by Allen's counsel relating to his relationship with Stephanie Allen and asserted his privileges under the Fifth Amendment of the United States Constitution and North Carolina Constitution, Article I, Sections 19 and 23. The debtor similarly objected to and asserted privilege relating to the production of documents described in the above-quoted paragraphs "A" and "E" of the July 2 order. Without waiving his objections, the debtor responded that no documents responsive to paragraph "A" existed.

Allen now seeks to compel the debtor to produce the documents and answer certain questions relating to which the debtor has asserted privilege. Allen also seeks the imposition of sanctions by the court for the debtor's alleged failure to comply with the July 2, 2013, Order. The debtor's refusal to comply with the July 2 Order rests on the provisions of the United States and North Carolina Constitutions that protect individuals from being compelled to offer self-incriminating

testimony.  The debtor's alleged apprehension of incrimination is based upon an obscure, and perhaps outdated, North Carolina criminal statute, N.C. Gen. Stat. § 14-184.

## DISCUSSION

The Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself[;]" Article I, Section 19 of the North Carolina Constitution provides that  "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land[;]" and Article I, Section 23 of the North Carolina Constitution, provides that "[i]n all criminal prosecutions, every person charged with crime has the right to ... not be compelled to give self-incriminating evidence." U.S. Const. amend. V; N.C. Const. Art. I, §§ 19, 23.

Questions arising under the North Carolina Constitution can definitively be resolved only by the North Carolina Supreme Court.  State v. Hicks, 333 N.C. 467, 484, 428 S.E.2d 167, 177 (1993) (citing State v. Arrington, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984)).  The North Carolina Supreme Court has adopted tests employed by the United States Supreme Court in its interpretation of the Fifth Amendment of the United States Constitution when interpreting Article I, Sections 19 and 23 of the North Carolina Constitution. See Id. at 484-85, 428 S.E.2d at 177.  This court will do the same. "The fifth amendment's protection against self-incrimination applies in any type of proceeding whether civil, criminal, administrative, investigatory, or adjudicatory." United States v. Sharp, 920 F.2d 1167, 1170 (4th Cir. 1990) (citing Maness v. Meyers, 419 U.S. 449, 464 (1975)).  This includes bankruptcy proceedings. In re Martin-Trigona, 732 F.2d 170, 175 (2nd Cir. 1984) (citing McCarthy v. Arndstein, 266 U.S. 34 (1924)).  It applies to not only evidence "which may directly support a criminal conviction, but to 'information which would furnish a link in the

chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.'" Sharp, 920 F.2d at 1170 (quoting Maness, 419 U.S. at 461). "[T]he privilege may not, however, be invoked on no more than the mere assertion by one claiming the privilege that information sought by the government may be incriminating. Whether there is a sufficient hazard of incrimination is of course a question for the courts asked to enforce the privilege." Id. (citing Hoffman v. United States, 341 U.S. 479, 486 (1951)).

In Sharp, the Fourth Circuit explained the two-part test that courts must use when asked to enforce a privilege asserted under the Fifth Amendment. First, the court must determine whether the information sought is incriminating in nature, which can appear either facially, based on the questions asked and the circumstances of the questions, or upon the offer of further contextual proof. Sharp at 1170 (citing Hoffman, 341 U.S. at 486-87). If the information is incriminating, the court must then determine whether criminal prosecution is sufficiently a possibility to warrant the protection afforded by the Fifth Amendment. Id. at 1171. To assist the court in gauging the possibility of prosecution, "the proper test simply assesses the objective reasonableness of the target's claimed apprehension of prosecution." Id.

In assessing this objective reasonableness, the Fourth Circuit cautioned in Sharp that:

> [O]n the better view of things here, the reasonableness of a claimed apprehension should simply be assumed once incriminating potential is found, unless there are genuine questions about the government's legal ability to prosecute. That is to say, once incriminating potential is found to exist, courts should not engage in raw speculation as to whether the government will actually prosecute . . . and should only pursue that inquiry when there are real questions concerning the government's ability to do so because of legal constraints such as statutes of limitation, double jeopardy, or immunity.

Sharp at 1171 (citations omitted).

The Rule 2004 Examination

It is debtor's contention that his answers to the questions posed by Allen's attorney and the documents ordered to be produced could potentially subject him to criminal prosecution under N.C. Gen. Stat. §14-184.  North Carolina General Statute § 14-184, entitled Fornication and adultery, provides: "If any man and woman, not being married to each other, shall lewdly and lasciviously associate, bed and cohabit together, they shall be guilty of a Class 2 misdemeanor:  Provided, that the admissions or confessions of one shall not be received in evidence against the other."  N.C. Gen. Stat. § 14-184 (1994).   In State v. Davenport, 225 N.C. 13, 33 S.E.2d 136 (1945), the North Carolina Supreme Court reviewed the sufficiency of the evidence in a conviction under the fornication and adultery statute and interpreted the language of the statute as follows:

> "Lewdly and lasciviously cohabit" plainly implies habitual intercourse, in the manner of husband and wife, and together with the fact of not being married to each other, constitutes the offense, and in plain words draws the distinction between single or nonhabitual intercourse and the offense the statute means to denounce.

Davenport, 225 N.C. at 17, 33 S.E.2d at 139.  This interpretation was again applied to N.C. Gen. Stat. § 14-184 by the North Carolina Supreme Court in State v. Ivey, 230 N.C. 172, 173-74, 52 S.E.2d 346, 347 (1949),  and State v. Kleiman, 241 N.C. 277, 279-80, 85 S.E.2d 148, 151 (1954).[1]

Furthermore, as held in Davenport:

> It is never essential to [a] conviction [under N.C. Gen. Stat. § 14-184] that even a single act of illicit sexual intercourse be proven by direct testimony. While necessary to a conviction that such acts must have occurred, it is, nevertheless, competent to infer them from the circumstances presented in the evidence.

Davenport, 225 N.C. at 16, 33 S.E.2d at 138.

---

[1] See also State v. Robinson, 9 N.C. App. 433, 176 S.E.2d 253 (N.C. App. 1970),  where the North Carolina Court of Appeals deferred to the interpretation of the statute adopted in Davenport.

It is necessary for the court to apply this interpretation of the statute to the questions asked during the debtor's Rule 2004 examination.  The questions to which he has asserted privilege, include:

Q:      When would you say, she [Stephanie Allen] became your girlfriend? . . .

Q:      Prior to April 17, 2012, had you had sexual intercourse with Stephanie Allen? . . .

Q:      So, at the time Stephanie Allen became your girlfriend, you knew that she was married to Calvin Allen, right? . . .

Q:      Did anyone spend the night at the Marriot Hotel with you in March 2012? . . .

Q:      Did you have sexual intercourse with Stephanie Allen that night in the Marriott Hotel? . . .

Q:      Was, in your mind, Stephanie Allen your girlfriend at that time? . . .

Q:      Does she ever spend the night at your residence?

A:      Yes

Q:      How often does she do that? Typical week? . . .

Q:      Do you recall about when she started spending the night at your place? . . .

Q:      Prior to April 17, 2012 had you engaged in sexual relations of any kind with Stephanie Allen? . . .

Q:      Since April 17, 2012 have you engaged in sexual relations of any kind with Stephanie Allen?

The incriminating nature of the information sought from the debtor is facially evident from the questions asked and the interpretation placed on the statute by the North Carolina Supreme Court.  Some of the questions asked serve to directly establish elements that are necessary to support a conviction under the fornication and adultery statute.  These would include questions pertaining

to Stephanie Allen's status as the debtor's girlfriend, how often she spent the night at his house and whether he had engaged in sexual relations with her since April 17, 2012.   Furthermore, taken as a whole, the more innocuous questions could serve to furnish a link in the chain that would lead to a successful prosecution.  The potential for this line of questioning to be incriminating is even more evident considering that the finder of fact can infer a violation of the statute based on circumstantial evidence of the status of the relationship.

Since the debtor has established that the incriminating nature of the information sought was facially evident, the reasonableness of his apprehension of prosecution will be assumed.  Although the debtor alleges apprehension of prosecution under a statute that has likely not been enforced in recent years and has even been held facially unconstitutional by a North Carolina trial court,[2] it is not this court's place to assess the probability of whether the State would or would not prosecute a crime that is still on its books and has not yet been repealed.   Sharp, 920 F.2d at 1171.

Allen's motion to compel the debtor to answer the questions asked during the Rule 2004 examination for which the debtor asserted privilege under the United States and North Carolina Constitutions is denied as to all the questions specifically listed in Allen's motion.

The Document Production

The debtor has also asserted the privilege regarding the production of documents listed in the Court's July 2 Order.  As discussed earlier, in accordance with Hicks, 333 N.C. at 484-85, 428 S.E.2d at 177, this court will interpret Article I, Sections 19 and 23 of the North Carolina Constitution under tests applied to similar language found in the Fifth Amendment of United States Constitution.

---

[2] Hobbs v. Smith, No. 05 CVS 267, 2006 WL 3103008 (N.C. Super., Aug 25, 2006).

The test adopted by the Supreme Court in determining whether the production of a document infringes upon the protections afforded by the Fifth Amendment employs a somewhat different analysis than that used to resolve the question of whether an individual may rightfully invoke the privilege when directly asked a question.  The chief inquiry in the analysis relating to the production of documents has always been whether individuals were being *compelled* to offer incriminating testimonial communications.  See, e.g., Baltimore City Dep't of Social Serv. v. Bouknight, 493 U.S. 549, 554 (1990);  U.S. v. Doe, 465 U.S. 605, 611 (1984) (hereinafter "Doe I").  The Supreme Court had historically focused on whether the contents of a document were incriminating, see, Fisher v. U.S., 425 U.S. 391, 405-11 (1976), but since Fisher, the analysis has focused on whether the actual act of producing the document is incriminating.  See Doe I, 465 US at 612-14;[3] Fisher, 425 U.S. at 410-13.

The protection of the Fifth Amendment does not extend to the *contents* of a voluntarily created document.  U.S. v. Hubbell, 530 US 27, 35-36 (2000).  The Supreme Court has consistently held that when a person has voluntarily created a document, they may be compelled to produce the document even though it may contain incriminating information.  See, e.g., Id. at 36;[4] Bouknight,

---

[3] See also Justice O'Connor's concurring opinion in Doe I, where she states that:

> the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind. The notion that the Fifth Amendment protects the privacy of papers originated in Boyd v. United States, 116 U.S. 616, 630 (1886), but our decision in Fisher v. United States, 425 U.S. 391 (1976), sounded the death-knell for Boyd.

Doe I, 465 U.S. at 618 (O'Connor, J., concurring).

[4] "Because the papers had been voluntarily prepared prior to the issuance of the summonses, they could not be 'said to contain compelled testimonial evidence, either of the taxpayers or of anyone else.'"  Hubbell, 530 U.S. at 36 (quoting Fisher v. United States, 425 U.S. 391, 409-10 (1976)).

493 U.S. at 555.[5]  This is because a voluntarily created document cannot be "said to contain compelled testimonial evidence." Hubbell, 530 U.S. at 36 (quoting Fisher, 425 U.S. at 409-10).  In Hubbell, the Court reaffirmed "the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact . . . because the creation of those documents was not 'compelled' within the meaning of the privilege." 530 U.S. at 35-36.

However, the Supreme Court has recognized that "the act of producing documents in response to a subpoena may have a compelled testimonial aspect." Hubbell, 530 U.S. at 36.  This is because "'the act of production' itself may implicitly communicate 'statements of fact.' By 'producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.'"  Id. "Whether the [Fifth Amendment] privilege protects . . . the act of production itself, is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating." Hubbell at 37.  "An examination of the Court's application of these principles in other cases indicates the Court's recognition that, in order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against himself." Doe v. U.S., 487 U.S. 201, 209-10 (1988) (hereinafter "Doe II").

In determining whether the act of production itself involves compelled testimonial communications, the Court has looked to whether the respondent was required to use "the contents

---

[5] "[A] person may not claim the [Fifth] Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." Bouknight, 493 U.S. at 555 (citations omitted).

of his own mind" in order to comply with the request.  Hubbell, 530 U.S. at 43 (citing Curcio v. United States, 354 U.S. 118, 128 (1957)).  The Supreme Court has recognized that "[i]t is the 'extortion of information from the accused,' . . .  the attempt to force him 'to disclose the contents of his own mind,' . . . that implicates the Self-Incrimination Clause." Doe II, 487 U.S. at 211 (quoting Couch v. United States, 409 U.S. 322, 308 (1973); Curcio, 354 U.S. at 128)).

For example, in In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011, 670 F.3d 1335 (11th Cir. 2012), the Eleventh Circuit upheld a respondent's assertion of privilege under the Fifth Amendment when he would have been required to use "the contents of his own mind" to comply with a subpoena duces tecum.  Id. at 1341, 1349.  There, law enforcement officials had legally seized certain computer equipment containing encrypted information that they believed might include child pornography but ultimately were unable to access.  In re Grand Jury at 1339. The owner of the computer equipment was then subpoenaed to produce the unencrypted contents of the digital media and "any and all containers or folders thereon."  Id.  The owner asserted a privilege under the Fifth Amendment, claiming that by decrypting the contents of the computer, "he would be testifying that he, as opposed to some other person, placed the contents on the hard drive, encrypted the contents, and could retrieve and examine them whenever he wished." Id. at 1339-40. The Eleventh Circuit upheld the owner's assertion of privilege under the Fifth Amendment holding that the act of producing the documents was testimonial and through compliance with the court's order, he would "certainly use the contents of his mind to incriminate himself or lead the Government to evidence that would incriminate him."  In re Grand Jury at 1349.  Furthermore, "[t]he difficult question whether a compelled communication is testimonial for purposes of applying the Fifth Amendment often depends on the facts and circumstances of the particular case." Doe II, 487 U.S. at 214-15 (citing Fisher, 425 U.S., at 410).

10

In paragraph "A" of the July 2, 2013 order, the debtor was ordered to produce:

> Copies of each and every document of written correspondence between the debtor and Stephanie Allen, including without limitation every card, letter, email, text message, Facebook post and Facebook message, and note, from January 1, 2010, to the present.

Regardless of the incriminating nature of the *contents* of these documents, the Supreme Court has directed that a Fifth Amendment inquiry into the compelled production of documents focuses on the *act* of production itself. Here, the debtor was requested to produce an objectively ascertainable group of documents that will not require him to make any implicit or explicit factual assertions or analyses in order to comply. The debtor is simply requested to produce documents that may include messages between his and Stephanie Allen's Facebook accounts, text messages between their phones, letters and emails written to each other and other notes or cards written to each other. The act of producing these documents does not require the debtor to reveal the contents of his mind or employ some type of logical calculus in order to comply; instead, he is merely surrendering the key to the strongbox. See Doe II, 487 U.S. at 210 & n.9. Furthermore, the mere act of producing these documents does not mean that the debtor is conceding that the correspondences are an accurate account of the facts, authenticating that they were authored by Stephanie Allen or making any other statements of fact, implicit or otherwise, about the documents. Finally, the act of production itself is not incriminating and does not implicate the debtor in any crime. Because compliance with the order does not implicate the debtor in any crime or require him to employ any analysis to determine what documents to produce, the act of producing the documents listed in paragraph "A" is non-testimonial in nature and unprotected by the Fifth Amendment.

In Paragraph "E" of the July 2, 2013, Order, the debtor was ordered to produce:

11

> Copies of all documents consisting of writings, journals, and calendars relating in any way to the debtor's relationship with Stephanie Allen.

Here, the debtor is asked to produce a group of documents that is not objectively ascertainable and may require him to use the "contents of his mind" to comply with the order. The order would require him to examine his own personal writings and journals and evaluate which writings and entries related to Stephanie Allen, whether or not she was explicitly mentioned in the writing. He would then have to determine whether the writing related to his "relationship" with Stephanie Allen even if an objective examination of the document by a third party might not reveal this meaning. This subjective selection of writings could result in the production of documents which either directly show a violation of N.C. Gen. Stat. § 14-184 or would provide a link in the chain of evidence from which such violation could later be inferred or proven. The only person that could conceivably provide an accurate list of the documents ordered in Paragraph "E" is the debtor and to do so would require him to assess and evaluate the documents , i.e., use the contents of his mind. Even though the contents of the writings are not protected, the debtor's selection of documents in response to the requests constitutes the giving of compelled testimony, some of which may be incriminating.

Allen's motion to compel is granted as to the documents listed in paragraph "A" of the July 2, 2013, Order and denied as to the documents listed in paragraph "E" of that same order. Finding cause for the debtor's assertion of privilege under the United States and North Carolina Constitution, Allen's motion for the imposition of sanctions is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**